IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DAN R. WALLER, RECEIVER,          §
                                  §
     Plaintiff-                   §
     counterdefendant,            §
                                  § Civil Action No. 3:07-CV-0491-D
VS.                               §
                                  §
DB3 HOLDINGS, INC., et al.,       §
                                  §
     Defendants-                  §
     counterdefendants-           §
     third-party plaintiffs,      §
                                  §
VS.                               §
                                  §
J. ROBERT DOBBINS, et al.,        §
                                  §
     Third-party defendants.      §

MEMORANDUM OPINION
AND ORDER

In this action brought by a court-appointed receiver, the
court must decide whether defendants have stated counterclaims and
third-party claims on which relief can be granted and have pleaded
fraud in accordance with the requirements of Fed. R. Civ. P. 9(b).
The court concludes that most claims are not subject to dismissal.
As to those that are, including the fraud claims, the court largely
allows defendants one more opportunity to plead claims that will
withstand dismissal.

I

This is a suit by plaintiff-counterdefendant Dan R. Waller
("Waller" or "the Receiver"), court-appointed receiver for Dobbins
Capital Corp., Dobbins Offshore Capital, LLC, Dobbins Partners,

L.P., and Dobbins Offshore, Ltd., and in the interest of Rhomi Partners, L.P. ("Rhomi"), against defendants-counterplaintiffs-third-party plaintiffs DB3 Holdings, Inc. ("DB3"), Skiles Partners, L.P. ("Skiles"), and Daniel E. Breen, III ("Breen") (sometimes collectively referred to as "defendants"). DB3, Skiles, and Breen have filed a third-party action against third-party defendants James Robert Dobbins, Jr. ("Dobbins") and Rhomi.

In June 2000 Rhomi, controlled by Dobbins, invested $2.97 million in Skiles in exchange for a 40% interest in Skiles.[1] At around the same time, Dobbins, acting in his individual capacity, invested $30,000 in DB3, a corporation that Breen had formed to act as Skiles's general partner. In return, Dobbins received a 40% ownership interest in DB3. Breen controlled both Skiles and DB3.

Under the Skiles limited partnership agreement ("Skiles LPA"), withdrawals from partnership capital accounts were prohibited. Nevertheless, Rhomi was permitted to withdraw funds on several occasions. First, in 2002 Rhomi withdrew $500,000 from the capital account in exchange for a reduction in its partnership interest from 40% to 33% and a promise to further fund Skiles' and DB3's expenses. Based on this agreement, Rhomi was allocated

---

[1]For purposes of this motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted).

approximately $35,000 more in expenses than it would have been under the computation methods of the Skiles LPA.

In 2003 Rhomi entered an agreement (the "2003 Agreement") that permitted an additional $250,000 to be borrowed from Rhomi's capital account. The 2003 Agreement provided that, if the money was not repaid within two weeks, DB3 and Breen would owe no further obligations to the partnership. Rhomi never repaid the $250,000, and this amount was subsequently treated as a withdrawal from Rhomi's capital account. In 2003, defendants charged Rhomi $405,000 more in expenses than Rhomi would have owed under the Skiles LPA. Dobbins was aware of this and did not object.

Finally, in early 2004, Rhomi was permitted to take $1,275,000 from its capital account pursuant to an agreement to withdraw from the partnership (the "2004 Agreement"). Under the terms of the agreement, Rhomi's partnership interest was reduced from 33% to 11% effective December 31, 2003, and reduced to 0% effective December 31, 2004. The 2004 Agreement also provided that DB3 and Breen would continue to have full discretion in allocating capital to satisfy the costs of the partnership and of DB3.

In March 2004 the Securities and Exchange Commission ("SEC") filed a lawsuit against Dobbins alleging a scheme to defraud investors. *See SEC v. Dobbins,* No. 3:04-CV-605-H (N.D. Tex. filed Mar. 23, 2004) (Sanders, J.) ("*SEC Action*"). That lawsuit is not directly related to the issues in the present case. Judge Sanders

later appointed Waller as receiver for, *inter alia,* Rhomi's interest in Skiles, which had previously been under Dobbins' control. *See SEC Action,* July 12, 2005 order. Waller later filed the present lawsuit, alleging that defendants mis-allocated Skiles's expenses to Rhomi's capital account, in violation of both the Skiles LPA and a freeze order that the court had entered in the *SEC Action. See SEC Action,* Mar. 23, 2004 order. After the case was transferred to the undersigned's docket, the court denied defendants' motion to dismiss. *See Waller v. DB3 Holdings, Inc.,* 2007 WL 3287328, at *1 (N.D. Tex. Nov. 6, 2007) (Fitzwater, J.).

In their second amended original answer, affirmative defenses, counterclaims, and third-party complaint ("answer"), defendants assert counterclaims against Waller, and third-party claims against Dobbins and Rhomi, for declaratory judgment, breach of contract, unjust enrichment, fraud, indemnification, and money had and received. Waller, and Dobbins and Rhomi, move to dismiss for failure to state a claim on which relief can be granted.[2]

---

[2]Some of these claims would seem to apply only to one party. But defendants do not distinguish among the parties in their pleadings, and the parties do not do so in their briefs.

In deciding these motions to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to [defendants].'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, [defendants] must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* ___ U.S. ___, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "'Factual allegations must be enough to raise a right to relief above the speculative level[.]'" *Id.* (quoting *Bell Atl.*, 127 S.Ct. at 1965). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [defendants'] obligation to provide the grounds of [their] entitlement to relief require[s] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl.*, 127 S.Ct. at 1964-65 (internal citations, quotation marks, and brackets omitted).

III

Waller, Dobbins, and Rhomi first move to dismiss defendants' declaratory judgment claim.

The federal Declaratory Judgment Act states: "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, (1995).  It gives federal courts the competence to declare rights, but it does not impose a duty to do so. *See Public Affairs Assocs. v. Rickover*, 369 U.S. 111, 112 (1962) (per curiam). Although "the district court's discretion is broad, it is not unfettered." *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993).

Waller moves to dismiss defendants' declaratory judgment counterclaim, contending it is redundant.  Defendants seek a declaratory judgment that the 2003 Agreement and the 2004 Agreement are binding, and, as such, serve as a complete defense to Waller's claims.  Defendants have separately raised these issues in their defense to Waller's claims.

"[W]hen the request for declaratory relief brings into

question issues that already have been presented in plaintiff's complaint and defendant's answer to the original claim," courts often exercise their discretion to dismiss the counterclaim "on the ground that it is redundant and a decision on the merits of plaintiff's claim will render the request for a declaratory judgment moot." 6 Charles Alan Wright, et al., *Federal Practice & Procedure* § 1406, at 33 (2d ed. 1990); *see also Kougl v. Xspedius Management Co. of Dallas/Fort Worth, L.L.C.,* 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (Fitzwater, J.) (exercising discretion to dismiss declaratory judgment counterclaim on grounds that it raised issues already presented in lawsuit).

Defendants contend that their request for declaratory relief is not redundant because it would protect them from harassment by Waller——i.e., by preventing Waller from voluntarily dismissing this lawsuit and filing it again. But the risk of this type of harassment is too remote to warrant defendants' requested relief. *See* Wright & Miller, *supra*, § 1406, at 34 (noting court conclusions that current Federal Rules of Civil Procedure afford sufficient protection against voluntary dismissal and repetitious litigation to render "a counterclaim for declaratory judgment involving the same transaction as plaintiff's claim wholly redundant").

They further argue that the declaratory relief supports their counterclaim for money damages, and thus does more than simply re-assert *defenses*. This is not dispositive. A claim for declaratory

judgment that replicates a counterclaim for money damages is as redundant as is one that replicates a defense.

Finally, defendants contend that their requested relief would affect more rights than those currently at stake in the litigation. They make no attempt, however, to demonstrate that an "actual controversy" exists regarding these supposed rights, as required for declaratory relief. *See* 28 U.S.C. § 2201; *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) ("A declaratory judgment action is ripe for adjudication only where an "actual controversy" exists. As a general rule, an actual controversy exists where a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." (internal brackets, citations, and quotation marks omitted)). Because the only issues identified as giving rise to an "actual controversy"——and thus the only ones eligible for declaratory relief——are already in issue in the present litigation, defendants' claims for declaratory judgment are wholly redundant and warrant dismissal.

IV

The court next considers the motions to dismiss defendants' breach of contract claims. Defendants allege that Waller, acting on behalf of Rhomi, and Dobbins and Rhomi breached the 2003 Agreement by refusing to refund sums owed defendants for costs chargeable to Rhomi's capital account. They also assert that

Waller breached a liability release provision in the 2004 Agreement by pursuing the present lawsuit.

A

Waller, Dobbins, and Rhomi raise two grounds for dismissing defendants' claim for breach of the 2003 Agreement. First, they maintain that Rhomi was not a party to that agreement because Dobbins did not purport to act on behalf of Rhomi when he signed it. Reading these agreements favorably to defendants, however, the court disagrees. The contractual benefit ($250,000) was conferred on Rhomi——not on Dobbins in his individual capacity. *See* 2d Am. Ans. Ex. B ("This document signed by you confirms a wire that will be sent to you for $250,000.00 *to the RHOMI Partners, L.P. account*[.]") (emphasis added). Although it may be possible that Rhomi was only a third-party beneficiary of the agreement instead of a party to it, this interpretation of the contract is neither compelled by the face of the contract nor by the other facts that defendants plead. *See Willard v. Humane HealthPlan of Tex., Inc*., 336 F.3d 375, 379 (5th Cir. 2003) (holding that, in deciding motion to dismiss, court considers only the facts pleaded in the complaint along with any documents attached or incorporated by reference, viewing them in light favorable to nonmovant).

Second, Waller, Dobbins, and Rhomi maintain that the 2003 Agreement is void for indefiniteness. *See Liberto v. D.F. Stauffer Biscuit Co*., 441 F.3d 318, 323 (5th Cir. 2006) ("Under Texas law

. . . [a] contract is 'legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations.'") (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000)).  The relevant provision of the 2003 Agreement reads as follows:

> If [the $250,000 is not repaid on] time, all of my obligations to the partnership will be null and void.  This does not nullify your obligations to the partnership. [/s/ Daniel A. Breen, III, President]

2d Am. Ans. Ex. B.[3]  Waller, Dobbins, and Rhomi posit that the letter is unclear concerning whether a failure to repay would void Breen's and DB3's obligations *to Skiles*, or void Skiles's obligation *to Rhomi*.

The choice between these proffered alternatives depends on a construction of the term "partnership," as used in the 2003 Agreement.  If "partnership" referred to Skiles, then the first alternative is correct; if to *Rhomi*, the second is correct. Limiting its inquiry to the face of this provision and facts alleged in defendants' answer, the court holds that this provision clearly refers to the Skiles limited partnership—the subject matter of the contracting parties' business relationship.  If it had referred to Rhomi, the second sentence of the provision would

_____

[3]Although the exhibits were filed with the first amended answer, they do not appear to have been filed with the second amended answer.  Absent a dispute among the parties, the court will assume that the exhibits attached to the first amended answer can be cited in analyzing the second amended answer.

have made little sense, because it would have purported to govern the obligations that Rhomi had to itself (and there is no indication that Breen had any financial interest in Rhomi). The court therefore concludes that this contractual provision is not void for indefiniteness.

B

Waller, Dobbins, and Rhomi also move to dismiss defendants' claim for breach of the 2004 Agreement.

Defendants maintain that, by bringing a lawsuit based on Rhomi's rights under the Skiles LPA, Waller has breached the provision of the 2004 Agreement that allegedly released defendants from their obligations under the Skiles LPA. The alleged liability release provides:

> except as otherwise described in this letter, after December 31, 2003, neither Daniel A. Breen, III, the General Partner nor the Partnership or any of their respective affiliates shall have any further duties, liabilities or obligations (financial or otherwise) to [Rhomi and Dobbins]

2d Am. Ans. Ex. A at 2. In response, Waller, Dobbins, and Rhomi emphasize the portion of this provision that reads, "*except* as otherwise described in this letter." *Id.* (emphasis added). They maintain that the letter has elsewhere incorporated provisions of the Skiles LPA governing the allocation of expenses (on which Waller's lawsuit is based). Reading the agreement favorably to defendants, however, the court disagrees. Nowhere does the 2004

Agreement mention the Skiles LPA, and only briefly does it refer to Breen's and DB3's authority to allocate expenses. *See* Ds. Am. Ans. Ex. A at 3 ("[DB3 and Breen] shall continue to have full discretion in allocating capital[.]"). Although this brief reference might incorporate a prior understanding, it does not necessarily incorporate the Skiles LPA. To conclude that it did, the court would have to consider evidence outside the scope of its inquiry for the purposes of deciding a motion to dismiss. Accordingly, the court denies the motions of Waller, Dobbins, and Rhomi to dismiss defendants' claim for breach of contract.

V

The court next considers the motions to dismiss defendants' claim for unjust enrichment.

Defendants allege that if they are not entitled to relief under their breach of contract claims, they have a right to a return of the benefits conferred on Dobbins and Rhomi——the cash withdrawals——in reliance on promises that were made. In their motions to dismiss, Waller, Dobbins, and Rhomi contend that defendants are not entitled to this relief because the subject matter of the dispute is covered by the parties' contracts——namely, the Skiles LPA, the 2003 Agreement, and the 2004 Agreement. *See Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no

recovery under a quasi-contract theory . . . because parties should be bound by their express agreements."). They also maintain that defendants have failed to allege that any benefits were obtained by fraud, duress, or the taking of undue advantage, as required by Texas law for proof of an unjust enrichment claim. *See Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex. 1992) ("A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."). The court disagrees.

First, defendants' unjust enrichment claim has been pleaded as an alternative to the contract claims, and it is possible that the contracts will later be held invalid, notwithstanding today's ruling on the motions to dismiss those claims. *See, e.g., Martin K. Eby Constr. Co.,* 369 F.3d at 467 ("[T]he court should not dismiss a claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that it could prove consistent with the allegations in the complaint." (internal quotation marks and brackets omitted)). It would thus be premature to dismiss the unjust enrichment claim as being foreclosed by existing contracts.

Second, defendants have alleged sufficient facts to show that Waller's, Dobbins', and Rhomi's retention of withdrawn funds would amount to the taking of undue advantage. Specifically, they have alleged that cash withdrawals were granted only on the condition

that defendants would be permitted to allocate expenses as they did.  2d Am. Ans. 10-11.  If it is later determined that they cannot enforce this understanding with a valid contract, then Waller, Dobbins, and Rhomi may have been unjustly enriched.[4]

The motions to dismiss the unjust enrichment claim are therefore denied.

VI

Waller, Dobbins, and Rhomi move under Rule 9(b) to dismiss defendants' fraud claims, contending that they have failed to plead fraud with particularity.  Waller also maintains that defendants have failed to adequately plead scienter.  *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986) (holding that proof of scienter is required for any fraud claim).

A

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b).  A complaint alleging fraud must specify the "'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what [the person] obtained thereby.'"  *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d

---

[4]Waller, Dobbins, and Rhomi emphasize that defendants have received benefits for the withdrawn funds, in the form of a reduction in Rhomi's partnership interest.  Although this may establish the *extent* to which defendants' enrichment of Waller, Dobbins, and Rhomi was unjust, it does not necessarily negate the entire claim for relief, and it does not warrant dismissal at this stage of the litigation.

1061, 1068 (5th Cir. 1994) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)).  A plaintiff must "'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"  *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 177-78 (5th Cir. 1997)).  In other words, the requirements are analogous to "the first paragraph of a newspaper story, namely the who, what, when, where, and how."  *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).  This Rule should be applied "with force, without apology."  *Williams*, 112 F.3d at 178.  "'[T]he particularity demanded by Rule 9(b) differs with the facts of each case [.]'" *United States ex rel. Wilkins v. N. Am. Constr. Corp.*, 173 F.Supp.2d 601, 613 (S.D. Tex. 2001) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000); see *Williams*, 112 F.3d at 178 (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific.").

Rule 9(b) is not intended, however, "to procure punctilious pleading detail."  *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273, *recon. denied*, 739 F. Supp. 1087 (N.D. Tex. 1990) (Fitzwater, J.).  It serves neither "as a throwback to the hypertechnical pleading requirements of the Field Code nor requires needlessly

repetitive pleading." *Id.* (citing *In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litig.*, 467 F. Supp. 227, 251 (W.D. Tex. 1979) (Higginbotham, J.)). Rule 9(b) must be "'read in conjunction with [Rule] 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting *Landry v. Air Lines Pilots Ass'n Int'l AFL-CIO*, 892 F.2d 1238, 1264 (5th Cir. 1990) (some internal quotation marks omitted)). Thus it must be viewed in light of Rule 8(a)'s goal of "simple, concise, and direct" pleadings. *Williams*, 112 F.3d at 178 (quoting Rule 8(e)(1)).

> The court's key concern in assessing a complaint under Rule 9(b) is to determine whether the plaintiff seeks to redress specific wrongs or whether the plaintiff instead seeks the opportunity to search out actionable wrongs. The complaint must be sufficiently particular to show that the plaintiff is not seeking a license to go fishing for indicia of fraud.

*Garcia v. Boyar & Miller, P.C.,* 2007 WL 2428572, at *4 (N.D. Tex. Aug. 28, 2007) (Fitzwater, J.) (internal quotation marks omitted).

Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." This aspect of the rule "relaxes the particularity requirement for conditions of the mind, such as scienter." *Tuchman,* 14 F.3d at 1068. Nevertheless, "case law amply demonstrates that pleading scienter requires more than a simple allegation that a defendant had fraudulent intent. To plead scienter adequately, a plaintiff

must set forth specific facts that support an inference of fraud."
*Id.*

Texas law determines whether certain facts may support an inference of fraud in this diversity action. In Texas, fraudulent intent "is determined at the time the party made the representation, [although] it may be inferred from the party's subsequent acts after the representation is made." *Spoljaric,* 708 S.W.2d at 434. "Failure to perform [a promise], standing alone, is no evidence of the promissor's intent not to perform when the promise was made. However, that fact is a circumstance to be considered with other facts to establish intent." *Id.* at 435. "[A] party's denial that they ever made a promise is a factor showing no intent to perform when they made the promise." *Id.*

B

Applying these principles to defendants' fraud claims, the court concludes that they have failed to plead fraud in accordance with the requirements of Rule 9(b).

Defendants essentially allege three acts of fraud. First, they assert that Rhomi was granted admission into the Skiles limited partnership on the strength of fraudulent misrepresentations. They aver that, in the weeks leading up to Rhomi's admission into Skiles, Dobbins (acting on behalf of Rhomi) intentionally misrepresented his and Rhomi's net worth, the value of assets that he and Rhomi had under management, and his ability

to raise additional capital. Defendants do not, however, identify what these misrepresentations were or how they were made, as required by Rule 9(b). *See Williams,* 112 F.3d at 179 ("The failure of . . . the complaint to identify specific statements made by any of the defendants is fatal to [a fraud claim].").

Second, pointing to the fact that Rhomi ultimately sought withdrawals from its capital account, defendants contend that Rhomi (acting through Dobbins) entered into the Skiles LPA while intending to dishonor the provision that "[n]o Partner shall be entitled to withdraw any part of their Capital Contribution or their Capital Account[.]" 2d Am. Ans. Ex. D at § 4.6. On its face, however, this provision establishes only that Rhomi was not *entitled* to such withdrawals—e.g., without permission of other partners. It does not forbid Rhomi from *seeking* to obtain withdrawals with the permission of his partners, and defendants have pleaded no extrinsic facts that would suggest otherwise. Thus even if Rhomi intended at the time of the agreement to seek withdrawals from the capital account, this would not prove that Rhomi intended to dishonor this provision of the agreement.

Third, defendants allege that Rhomi and Dobbins induced them to grant withdrawals from Rhomi's capital account by entering into the 2003 Agreement and the 2004 Agreement with the intent to repudiate those agreements. Specifically, they aver that Rhomi and Dobbins intended to repudiate the following: the reductions in

Rhomi's partnership interest in Skiles; the promise to repay a $250,000 withdrawal; the release of certain obligations in the event that Rhomi did not repay the loan; and the authorization to charge Skiles's expenses to Rhomi's capital account. To support these claims, they assert that Rhomi and Dobbins have in fact repudiated these promises and presently seek funds and remedies that they had relinquished. The court concludes that these allegations likewise fail to satisfy the pleading requirements of Rule 9(b).

Defendants do not specify how or when Rhomi and/or Dobbins repudiated these promises, nor do they explain how Rhomi and/or Dobbins are presently seeking relinquished funds. Because Waller was not the Rhomi representative who made these alleged promises, his present repudiation of the promises does not prove an intent by Rhomi and/or Dobbins to repudiate them at the time they were made. Moreover, defendants' allegation that Dobbins attempted to convey an unspecified partnership interest to *someone else* does not of itself prove that he was attempting, as an agent of Rhomi, to defraud *defendants.* Finally, the mere fact that Rhomi ultimately failed to repay the sum of $250,000 does not prove that this was its original intention. *See Spoljaric,* 708 S.W.2d at 435. The motion to dismiss the fraud claims is therefore granted.

The court next considers whether to dismiss defendants' claims for indemnification of expenses that Breen and DB3 incurred in defending a separate lawsuit: *Larry Elins v. DB3 Holdings, Inc.,* No. 3:05-CV-1556-H (Sanders, J.) ("*Elins Action*"). Defendants allege that this indemnity right derives from the Skiles LPA.[5]

Waller, Dobbins, and Rhomi maintain that the Skiles LPA provides only for indemnification by the Skiles partnership itself, not by individual partners, such as Rhomi. Consequently, they assert that Breen and DB3 can recover their litigation expenses from Skiles alone, and not from them. Defendants respond that, even if this is true, the 2004 Agreement gives Skiles the right to recover costs of indemnifying Breen and DB3 from Rhomi's capital account, which is now controlled by Waller.[6] They therefore maintain that Skiles's action to recover those costs from Waller is justified. Waller's sole reply is that it is better characterized as a claim for breach of contract rather than one for indemnification.[7] The court does not perceive how this change in terminology affects the analysis. Because defendants have pleaded

---

[5]Defendants also rely in their answer on DBS's Bylaws and the Texas Business Corporations Act, but they have apparently abandoned these alleged grounds for indemnification in their opposition to the motions to dismiss.

[6]No party questions whether defendants' pleadings support this explanation of the indemnification claim.

[7]For their part, Dobbins and Rhomi do not make any reply.

a plausible right in Skiles——however labeled——to recover from Waller the expenses that Skiles incurred in indemnifying Breen and DB3, the motion to dismiss the claim is denied.

VIII

Finally, the court considers Waller's challenge to defendants' claims for money had and received.

"[T]o maintain an action for money had and received, [defendants must] establish that [Waller, Dobbins, and Rhomi] held money which in equity and good conscience belonged to [defendants]. Money had and received is an equitable doctrine applied to prevent unjust enrichment." *Bank of Saipan v. CNG Fin. Corp*, 380 F.3d 836, 840 (5th Cir. 2004) (quoting *Miller-Rogaska, Inc. v. Bank One, Texas, N.A.*, 931 S.W.2d 655, 662 (Tex. App. 1996, no writ) (ellipsis omitted)). "'[A] cause of action for money had and received is less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely at the inquiry, whether the defendant holds money, which belongs to the plaintiff.'" *Id.* (quoting *Staats v. Miller*, 243 S.W.2d 686, 687-88 (Tex. 1951)).

Defendants appear to allege three claims for money had and received. First, they seek recovery of the sum of $800,000 that they tendered to Waller under the court's order that Waller "take custody, control and possession of . . . any interest . . . of Rhomi in Skiles." *SEC Action,* July 12, 2005 order at 6. Second,

they ask for indemnification of their expenses in the *Elins Action*.
Third, they request recovery of Rhomi's capital withdrawals. In
opposing the motion to dismiss, they do not defend the first of
these claims as an independent ground for recovery. Rather, they
clarify that it should be viewed together with the second—i.e.,
that the right to recover the $800,000 is based on their alleged
right to indemnification. Waller moves to dismiss this claim on
the basis that there is no indemnity right. But as the court
explains above, defendants have successfully pleaded a right to
indemnification, and Waller has provided no basis for concluding
that the facts that support such a claim would be insufficient to
support the money had and received claim. Accordingly, the court
denies this ground of Waller's motion to dismiss.

IX

Dobbins and Rhomi also move to dismiss the remaining claims
asserted against Dobbins in his individual capacity, which includes
the claims for breach of contract, unjust enrichment, and money had
and received. Each of these claims is based on Rhomi's allegedly
wrongful retention of funds that were withdrawn from its capital
account.

Although as a practical matter Dobbins controlled Rhomi, the
fact that he is only a limited partner in Rhomi shields him from

liability for its debts.[8]  *See* Tex. Rev. Civ. Stat. Ann. art.
6132a-1, § 3.03 (a) (Vernon Supp. 2006-07) ("[A] limited partner is
not liable for the obligations of a limited partnership[.]").
*Rhomi* (not Dobbins) was the legal partner in Skiles, and *Rhomi* (not
Dobbins) was the legal recipient of its capital withdrawals.
Therefore, the debts incurred by virtue of those withdrawals are
Rhomi's.

Defendants disregard these legal formalities and advance what
appears to be a veil-piercing theory of recovery.  They emphasize
that Dobbins, personally, was the one who ultimately benefited from
Rhomi's capital withdrawals.  Defendants cite no authority,
however, for the proposition that such a theory can be applied in
the context of limited partnerships, and at least one court has
rejected it.  *See Pinebrook Props., Ltd. v. Brookhaven Lake Prop.
Owners Ass'n,* 77 S.W.3d 487, 499 (Tex. App. 2002, pet. denied)
("The theory of alter ego, or piercing the corporate veil, is
inapplicable to [limited] partnerships.").  The court therefore
concludes that Dobbins cannot be held personally liable for Rhomi's
refusal to refund the capital withdrawals.  The claims against him
for breach of contract, unjust enrichment, and money had and

---

[8]Texas law makes an exception, *inter alia,* for circumstances
where the limited partner's control of the business gives one with
whom he is transacting business the reasonable belief that he is a
general partner.  *See* Tex. Rev. Civ. Stat. Ann. art. 6132a-1, §
3.03 (a) (Vernon Supp. 2006-07).  There is no contention, however,
that this or any other statutory exception applies here.

received are therefore dismissed.[9]

                                    X

Defendants request leave to amend their dismissed claims.
Waller, Dobbins, and Rhomi oppose the request on the ground that
defendants have already amended their answer twice.

> [I]n view of the consequences of dismissal on
> the complaint alone, and the pull to decide
> cases on the merits rather than on the
> sufficiency of pleadings, district courts
> often afford plaintiffs at least one
> opportunity to cure pleading deficiencies
> before dismissing a case, unless it is clear
> that the defects are incurable or the
> plaintiffs advise the court that they are
> unwilling or unable to amend in a manner that
> will avoid dismissal.

*In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68
(N.D. Tex. 2005) (Fitzwater, J.) (internal quotation marks omitted)
(quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter &
Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (Fitzwater, J.)).
Defendants' prior amendments were made without the benefit of a
decision of this court identifying pleading defects. The court
will therefore afford them "one opportunity to cure pleading
deficiencies before dismissing a case."[10] The court denies,

_____

[9]Because the court has dismissed defendants' fraud claims, and
it is unclear whether they will be able to state such claims in an
amended pleading, the court need not address whether Dobbins can be
held individually liable for fraud.

[10]Although in granting leave to amend the court is affording
defendants the opportunity to state a declaratory judgment claim,
the court doubts that this deficiency can be cured, because it
appears unlikely that defendants will be able to identify an

however, leave to amend with respect to the dismissed claims against Dobbins, because an amendment would not cure those defects. Accordingly, within 30 days of the date this memorandum opinion and order is filed, defendants may file a third amended answer, affirmative defenses, counterclaim, and third-party complaint.

*     *     *

Dobbins' and Rhomi's September 25, 2007 second amended motion to dismiss third-party claims is granted in part and denied in part. Waller's September 28, 2007 motion to dismiss defendants' second amended counterclaim is granted in part and denied in part. Defendants are afforded a period of 30 days from the date this memorandum opinion and order is filed to file a third amended answer, affirmative defenses, counterclaim, and third-party complaint.

**SO ORDERED.**

February 12, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

"actual controversy" that exists apart from the present litigation and that would qualify for declaratory relief.