IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DAN R. WALLER, RECEIVER, §
 §
        Plaintiff, §
 § Civil Action No. 3:07-CV-0491-D
VS. §
 §
DB3 HOLDINGS, INC., et al., §
 §
        Defendants. §

MEMORANDUM OPINION
AND ORDER

In this action by a court-appointed receiver to recover for the alleged mis-allocation of a limited partnership's expenses, the receiver moves for summary judgment on his claim for breach of fiduciary duty. Concluding that he has not established that he is entitled to this relief, the court denies the motion.

I

Because this case is the subject of three prior opinions,[1] the court need only briefly summarize the pertinent background facts. Plaintiff Dan R. Waller ("Waller"), a court-appointed receiver, brings this lawsuit on behalf of Rhomi Partners, L.P. ("Rhomi"), which was a limited partner in Skiles Partners, L.P. ("Skiles"). Skiles is controlled by defendants DB3 Holdings, Inc. ("DB3") and Daniel A. Breen, III ("Breen"). Waller alleges that defendants

---

[1] *Waller v. DB3 Holdings, Inc.*, 2008 WL 2396750 (N.D. Tex. June 12, 2008) (Fitzwater, C.J.); *Waller v. DB3 Holdings, Inc.*, 2008 WL 373155 (N.D. Tex. Feb. 12, 2008) (Fitzwater, C.J.); *Waller v. DB3 Holdings, Inc.*, 2007 WL 3287328 (N.D. Tex. Nov. 6, 2007) (Fitzwater, J.).

mis-allocated Skiles's expenses to Rhomi's capital account, in violation of the Skiles limited partnership agreement ("Skiles LPA"). He asserts claims for breach of contract, breach of fiduciary duty, conversion, civil conspiracy to breach fiduciary duty, gross negligence, constructive trust, and exemplary damages. Waller moves for partial summary judgment on his breach of fiduciary duty claim.[2]

II

Because Waller bears the burden of proof on the breach of fiduciary duty claim on which he seeks summary judgment, he must establish "'beyond peradventure all of the essential elements of the claim.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). The court has noted that the "beyond peradventure" standard is "heavy." *See, e.g., Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.).

III

A

Waller asserts that DB3, as the managing general partner of Skiles, and Breen, as the President and chief executive officer of DB3, owed Skiles's limited partners, including Rhomi, a strict

---

[2]Defendants' October 3, 2008 motion for leave to file surreply is denied.

fiduciary duty. He further asserts that defendants breached this duty by charging 100% of prepaid 2005 expense items to Rhomi's capital account. Defendants argue that, under Texas limited partnership law, general partners do not owe fiduciary duties to limited partners. The court need not define precisely what duties a general partner owes to a limited partner, however, because even under a strict fiduciary duty standard, Waller has not established that a breach occurred. Therefore, the court will assume *arguendo* that defendants owed a fiduciary duty to Rhomi.

B

Waller does not state precisely how the allocation of the prepaid expenses to Rhomi's account breached defendants' fiduciary duty. He appears to argue in his brief, however, that defendants breached their duty by failing to fairly and accurately account for the partnership's property and by generally acting in bad faith in allocating the prepaid expenses to Rhomi.

1

Waller has not established that defendants failed to fairly and accurately account for the partnership's property. A reasonable jury could find that defendants accurately accounted for the partnership property. It could reasonably find that defendants furnished Rhomi with Schedule K-1 tax statements and that Rhomi knew precisely what expenses were allocated to it. Waller does not allege that any partnership property was unaccounted for or has

disappeared.

The premise of Waller's theory appears to be that it was unfair for two reasons to charge all the prepaid 2005 expenses to Rhomi's account: first, it was unfair to allocate 100% of the expenses to Rhomi's account, and, second, it was unfair to allocate the prepaid 2005 expenses to Rhomi's account because Rhomi ceased to be a limited partner of Skiles on December 31, 2004. Determining whether it was in fact unfair to charge Rhomi with these expenses implicates several material fact disputes. Defendants contend that the allocation was fair because they were authorized to allocate expenses in this manner under both the Skiles LPA and the January 15, 2004 Withdrawal Agreement ("Withdrawal Agreement"). Furthermore, defendants argue that the allocation was fair in light of Rhomi's premature withdrawal of funds from its capital account, and that defendants actually conditioned the withdrawal on being able to allocate a larger portion of expenses to Rhomi's account.

2

The court first considers the percentage of the expenses allocated to Rhomi's account. Defendants argue that the Withdrawal Agreement confirmed that they had full discretion to allocate Skiles's expenses. The court need not analyze whether the original Skiles LPA agreement authorized this allocation because defendants contend it was authorized by the subsequent Withdrawal Agreement,

and Waller has not established that the Withdrawal Agreement did not authorize it.[3] The Withdrawal Agreement states: "[T]he General Partner and Mr. Breen shall continue to have full discretion in allocating capital to satisfy the general and administrative costs of the Partnership and the General Partner." Ds. App. 296. Although Waller argues that Rhomi was not agreeing to be charged 100% of the partnership expenses, he has not established that allocating all of the expenses to Rhomi was impermissible in the exercise of "full discretion."

Defendants further argue that this allocation was fair in light of Rhomi's premature withdrawal of its funds from Skiles. It is undisputed that the Skiles LPA prohibited Rhomi from withdrawing funds from its capital account in Skiles. Nevertheless, defendants allowed Rhomi to withdraw funds on several occasions[4] on the condition that they would allocate a higher percentage of Skiles's

---

[3]Waller denies that the Withdrawal Agreement was intended to modify the terms of the Skiles LPA. He concedes, however, that whether it was intended to modify the Skiles LPA is a disputed fact issue for trial. Waller also contends that this fact issue is irrelevant to deciding whether defendants breached their fiduciary duty to Rhomi. The court disagrees. Defendants argue that the Withdrawal Agreement authorized the allocation that was an alleged breach of fiduciary duty, and Waller has not established otherwise. Therefore, whether the Withdrawal Agreement was intended to modify the Skiles LPA is relevant to the fiduciary duty claim, and the court must construe the fact issue in favor of the nonmovant defendants.

[4]Defendants permitted Rhomi to withdraw from its capital account $300,000 in August 2002; $200,000 in October 2002; $250,000 in April 2003; and $200,000 in August 2003.

expenses to Rhomi's account. Rhomi did not object to being allocated a higher percentage of Skiles's expenses following these withdrawals. Then, in January 2004, Rhomi sought to withdraw $1,275,000 from its capital account. Defendants agreed to this withdrawal under the terms of the Withdrawal Agreement, which confirms that Breen had full discretion to allocate partnership expenses. In light of this premature withdrawal of a substantial portion of its account, Rhomi has not established that allocating to it 100% of Skiles's expenses was unfair as a matter of law.

3

The court now turns to the contention that it was unfair to allocate prepaid 2005 expenses to Rhomi's account. Waller argues that because the Withdrawal Agreement provided that Rhomi would no longer have a partnership interest in Skiles as of December 31, 2004, it was unfair as a matter of law to charge Rhomi for prepaid 2005 expenses. On the other hand, defendants contend that the Withdrawal Agreement provided that Rhomi would continue to be responsible for partnership expenses until its "Final Withdrawal," which would not take place until August 2005. Breen avers in his affidavit that it was his belief that the Withdrawal Agreement authorized him, in his discretion, to allocate prepaid 2005 expenses to Rhomi's account and that he did so in good faith because he believed that it was in the best interest of Skiles "to insure that expenses could be met during the wind up of Rhomi's

partnership interest." Ds. App. 302. The court cannot say that this is an unreasonable interpretation of the agreement, as Waller advocates. Although the Withdrawal Agreement states that Rhomi would no longer have a partnership interest in Skiles as of December 31, 2004, it provides that Rhomi would not be able to make its "Final Withdrawal" until Skiles completed its 2004 Schedule K-1 tax statements.[5] The Withdrawal Agreement also explicitly provides that Breen will be entitled to his salary through the date of Final Withdrawal and will continue to have full discretion in allocating Skiles's general and administrative costs.[6] Defendants contend that the 2005 expenses charged to Rhomi's account were only those necessarily incurred during the time it took to wind up the partnership, which was necessitated by Rhomi's withdrawal, and Waller has not provided evidence disputing this.

---

[5]Skiles completed the Schedule K-1 tax statements in August 2005.

[6]The Withdrawal Agreement provides:

> (g) you acknowledge and agree that Mr. Breen will be entitled to his customary salary through the date of the Final Withdrawal, whether or not the General Partner has replaced your capital, is in its present form or has liquidated the Partnership, and that the General Partner and Mr. Breen shall continue to have full discretion in allocating capital to satisfy the general and administrative costs of the Partnership and the General Partner[.]

Ds. App. 296.

C

Waller also alleges that defendants breached their fiduciary duty and the Skiles LPA by acting in bad faith. The only act of bad faith that Waller alleges, however, is the allocation of the 2005 expenses to Rhomi. As discussed above, Waller has not established that this allocation was unauthorized or unfair, or that it was otherwise made in bad faith. Therefore, he has not established beyond peradventure that defendants acted in bad faith. Nor has Waller shown without genuine and material dispute that defendants in any other manner breached the fiduciary duty owed to Rhomi.

D

In denying partial summary judgment, the court suggests no view regarding whether Waller can prove his claim for breach of fiduciary duty at trial. The question here is whether Waller has met his summary judgment burden and established beyond peradventure that defendants breached a fiduciary duty. Because material fact disputes remain, Waller has not met this burden.

\* \* \*

The court denies Waller's August 1, 2008 motion for partial summary judgment. Defendants' October 3, 2008 motion for leave to

file surreply is denied.

**SO ORDERED.**

October 8, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE